NO. 12-09-00291-CV

 

IN THE COURT OF APPEALS          

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

GARLAND C. POOL, JR., AND                   
§                   APPEAL FROM THE 392ND

DOLORES POOL HERRINGTON,

s/p/a DOLORES HOPSON,

APPELLANTS

            

V.                                                                      
§                   JUDICIAL DISTRICT COURT

 

RIVER BEND RANCH, LLC, A

DELAWARE LIMITED

LIABILITY COMPANY,

APPELLEE                                                     
§                   HENDERSON COUNTY, TEXAS              







OPINION

            Garland
C. Pool, Jr. and his sister, Dolores Pool Herrington (collectively Appellants),
appeal the trial court’s issuance of a permanent injunction prohibiting them
from operating an all-terrain vehicle (ATV) park on their 3,000 acre ranch.  In
two issues, Appellants contend that the trial court erred in determining that
the noise from their ATV park constituted a nuisance and that the injunction
was overbroad.  We affirm.

 

Background

            Pool
Ranch is located three and one-half miles northeast of Athens, Texas.  It has
been owned by the Pool family since the nineteenth century.  Herrington
testified that her family began using it for camping and recreational
activities in the 1980s.  Initially, these activities included the operation of
dirt bikes, but later the operation of ATVs became prevalent.  Herrington
stated that her children and nephews began bringing their friends to use the
trails that had developed on the ranch over the years.  By 2003, Appellants
decided to open up the ranch to the public as a commercial ATV park.  The operation
of the commercial ATV park continued to expand until 2007.  According to
Herrington, in 2007, Appellants each made $4,000 from the ATV park, which was
the most they had made in any one year.

            In 2007,
River Bend Ranch, L.L.C., which was co-owned by Edwin L. Cox, Jr. and Walter
Umphrey, filed suit to enjoin Appellants from operating the ATV park.  In 1973,
Cox had begun purchasing the approximately 2,000 acres adjoining Pool Ranch,
which comprised River Bend Ranch.  In their pleadings, Cox and Umphrey alleged
that the ATV park had interfered with the peacefulness, tranquility, quietness,
solitude, and enjoyment of their land and had caused discomfort and annoyance
to persons of ordinary sensibilities residing in the community.

            Bobby
Williams, who had purchased his property adjoining Pool Ranch in 1995,
intervened in the suit to enjoin the use of Pool Ranch as a commercial ATV park. 
Williams, who had retired from the concrete company TXI, stated that he had
moved to the community to raise cattle and have a little peace and quiet before
he died.  He contended that the peace and quiet of the community had
disappeared with the appearance of the commercial ATV park in the area.

            Following
a bench trial, the trial court entered an order that, among other things,
enjoined Appellants from engaging in the following acts on Pool Ranch:

 

(1)    
Operating or allowing others to
operate a commercial all-terrain vehicle park (which specifically shall
include, but not be limited to, a prohibition on the operation of any
commercial activity, that has as a substantial part of that venture the act of
allowing persons to operate motorized vehicles, all terrain vehicles of any
nature, or motorcycles upon the property);

 

(2)    
Operating or allowing others to
operate any commercial cross country racing event;

 

(3)    
Operating or allowing others to
operate a commercial concert;

 

(4)    
Allowing groups of more than 50
persons to bring alcohol[ic] beverages onto the property for personal
consumption at any commercial event;

 

(5)    
Allowing minors to have possession
of or to consume alcoholic beverages upon the property outside the presence of
their parents;

 

(6)    
Allowing groups of more than 75
persons to attend or participate in any commercial event where the consumption
of alcoholic beverages is allowed; or 

 

(7)    
Conducting or allowing others to
conduct any mass gathering in violation of Chapter 751 of the Texas Health
& Safety Code.

 

 

This appeal
followed.[1]    

 

Evidentiary Sufficiency–Nuisance

            In
their first issue, Appellants contend that the evidence is legally and
factually insufficient to support the trial court’s finding that their conduct
created a nuisance. 

Standard
of Review

            When
reviewing a finding of fact for legal sufficiency, we may set aside that
finding of fact only if the evidence at trial would not enable a reasonable and
fair minded fact finder to make the finding.  See City of Keller
v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).  In making this
determination, we must credit favorable evidence if a reasonable fact finder
could, and disregard contrary evidence unless a reasonable fact finder could
not.  See id.  The fact finder is the sole judge of the credibility
of the witnesses and the weight to be assigned to their testimony.  See id.
at 819.  The fact finder is free to believe one witness and disbelieve another,
and reviewing courts may not impose their own opinions to the contrary.  See
id.  Further, a fact finder “may disregard even uncontradicted
and unimpeached testimony from disinterested witnesses” where reasonable.  See
id. at 819–20.  Accordingly, we must assume that the fact finder
chose what testimony to disregard in a way that favors the verdict.  See
id. at 820.  Moreover, where conflicting inferences can be drawn
from the evidence, it is within the province of the fact finder to choose which
inference to draw, so long as more than one inference can reasonably be drawn. 
See id.  Therefore, we must assume the fact finder made
all inferences in favor of the verdict, if a reasonable person could do so.  See
id.   

            Regarding
factual sufficiency challenges, when the party who had the burden of proof on
an issue in a bench trial complains about the absence of a finding of fact by
the trial court, we treat the absence of the finding as a refusal by the trial
court to find the fact from a preponderance of the evidence.   Canal Ins.
Co. v. Hopkins, 238 S.W.3d 549, 557 (Tex. App.–Tyler 2007, pet. denied). 
When the party who had the burden of proof on an issue asserts that the trial
court’s refusal to find the fact is contrary to the evidence, we must overrule
the complaint unless we determine that, based on our consideration of all of the
evidence, the refusal is so contrary to the great weight and preponderance of
the evidence that it is manifestly unjust.  See id. 


            When
reviewing factual sufficiency issues arising from a bench trial, we remain
mindful that the trial court, as the trier of fact, is the sole judge of the
credibility of the witnesses and the weight to be given their testimony.  Id. 
The trial court may take into consideration all of the facts and surrounding
circumstances in connection with the testimony of each witness and accept or
reject all or any part of that testimony.  Id.  Where enough
evidence is before the trial court so that reasonable minds could differ on the
meaning of the evidence, or the inferences and conclusions to be drawn from the
evidence, we may not substitute our judgment for that of the trial court.  Id.
at 558.

 

 

Governing
Law

            A
“nuisance” is a condition that substantially interferes with the use and
enjoyment of land by causing unreasonable discomfort or annoyance to persons of
ordinary sensibilities.  Schneider Nat’l Carriers, Inc. v. Bates,
147 S.W.3d 264, 269 (Tex. 2004).  Courts have divided actionable nuisance into
three classifications:  (1) negligent invasion of another’s interest; (2)
intentional invasion of another’s interest; or (3) other conduct, culpable
because abnormal and out of place in its surroundings, that invades another’s
interests.  See City of Tyler v. Likes, 962 S.W.2d 489, 503 (Tex.
1997).  Noise, if sufficiently extreme, may constitute a nuisance.  See Schneider,
147 S.W.3d at 269; see also Kane v. Cameron Int’l Corp. 331
S.W.3d 145, 148 (Tex. App.–Houston [14th Dist.] 2011, no pet.) (nuisance may
arise when person’s senses are physically assaulted).

Evidence

            Cox
testified that the noise from the ATV events on Pool Ranch created so much
noise that he changed the way he used River Bend Ranch.  He further testified
that the largest lake on his property operated as an echo chamber for the ATV
noise.  Cox stated that the ATV events had changed the way he could use his
ranch because he refused to subject any of his guests to the noise from the ATVs. 
Cox indicated that this noise had become so bad that he could not use his
property during one of the ATV events. 

            Don
Cardin, the ranch manager for River Bend Ranch, stated that the biggest issues for
him were the noise of the ATVs and the stereos on the ATVs.  However, he
indicated that the motorcycle noise was possibly worse because it had a higher
pitch and was “wangier”[2]
than the noise from the ATVs.  Cardin stated that noise was the biggest problem
for him, but that there were also issues with dust.  Cardin further indicated
that the lake magnified the noise.  Finally, Cardin noted that there was an
average of over one hundred ATVs per event at Pool Ranch.

            Williams,
whose house is one hundred fifty feet from Pool Ranch, described the noise level
from an ATV event at Pool Ranch as being somewhere between a jet airplane and a
helicopter.  Williams stated that most of the noise was from the ATVs.  Williams
further stated that the noise from these events at night could be so dreadful
that it would “stand you up on your end[.]”

            Nancy
Saunders, who lives directly across from Pool Ranch, also complained about the
noise from the ATVs in her testimony.  Saunders stated that the motorcycles
were even louder than the ATVs.  Saunders further stated that she and her
husband did not feel comfortable leaving their property during the events on
Pool Ranch.  Saunders testified that she and her husband also did not feel
comfortable entertaining friends during these ATV events.  Saunders further
testified that the noise usually ended around midnight, but would begin anew in
the morning as early as 5:30 a.m.

            John
Tarter testified that he lives about two miles from Pool Ranch.  Tarter further
testified that there was considerable noise at all hours of the day and night
when the ATV events were held.  Tarter also complained about the excessive
traffic, which, according to him, the small, oil-topped roads in the community
were unable to handle.

            Joe
Graham testified that he has lived about one-half mile from Pool Ranch for
thirty-eight years.  Graham stated that the ATV events caused a lot of problems
for the community, including high noise levels, drunken driving, and sanitation
problems.  Graham described the noise as “just about like a helicopter over
your house, . . . that goes on pretty well all night long” as well as during
the day.  Graham testified that the noise at night could be “unbearable.” 
Graham further testified that when there was not an event occurring at Pool
Ranch, there would be “no noise whatsoever” in the community.

            Shea
Phillips, who lives approximately one-quarter mile from Pool Ranch, testified
that he has known the Pools and has been their neighbor his entire life.  Phillips
further testified that the ATV events at Pool Ranch caused minimal noise and
did not affect his use of his land.  Phillips indicated that he could hear the
events at Pool Ranch “a little bit” from his property, but that he could not
hear any noise when he was inside his house.  Phillips stated that he did not
have trouble sleeping during the ATV events on Pool Ranch.

            Roger
Blair, who lives in Weatherford, Texas, testified that he has attended most of
the ATV events on Pool Ranch since they began in 2003.  Blair further testified
that he owns a cabin approximately 750 feet from the entrance of Pool Ranch.  Blair
stated that he does not have any trouble sleeping at night when he stays at his
cabin because “you can barely hear anything from over there.”  Blair further
stated that from inside his cabin, he could not hear any activities at Pool
Ranch.

            Mark
Jordan served as the Chief Deputy for the Henderson County Sheriff’s Department
during 2006 and 2007.  Jordan testified that he had worked on Pool Ranch as
private security during the ATV events from 11:00 p.m. to 7:00 a.m.  Jordan
further testified that the noise would continue for between two and four hours
after he arrived for his shift.  Jordan stated that he would not describe the
noise as loud, but rather as normal to someone who had ever owned a
four-wheeler.  Jordan further stated that there was not any constant noise that
he would describe as annoying.

            Wick
Gabbard, an investigator for the Henderson County Sheriff’s Department,
testified that he had also worked on Pool Ranch as private security for one ATV
event from 11:00 p.m. to 7:00 a.m.  Gabbard testified that the night he worked
there, it had been very cold and people were riding predominantly during the
day.  Gabbard further testified that the ATVs he heard were “relatively normal
sounding” and that it was not a noise that concerned him. 

Discussion

In
support of its judgment, the trial court made the following findings of fact
with regard to the alleged nuisance caused by Appellants as a result of their using
their ranch for an ATV park:

 

(21)         All of the all terrain vehicle events and
motocross events that occurred on the Defendants’ property caused unreasonable
discomfort to the Plaintiff and Intervenors.

 

(22)         All of the all terrain vehicle events and
motocross events that occurred on the Defendants’ property are annoying to
persons of ordinary sensibilities.

 

(23)         All of the all terrain vehicle events and
motocross events that occurred on the Defendants’ property substantially
interfered with the Plaintiff’s and Intervenors’ use and enjoyment of the
property they own.

 

. . . .

 

(30)         The acts that have occurred on the
Defendants’ property are not normal for the community that surrounds that land.

 

            Here,
the respective testimonies of Cox, Cardin, Williams, Saunders, Tarter, and
Graham describe noise and activities from the ATV events at Pool Ranch that,
for each of them, caused discomfort and annoyance.  We rely upon the trial
court to determine whether each of these individuals is “a person of ordinary
sensibilities.”  Based upon our review of their testimonies, we conclude that this
evidence supports the existence of noise levels caused by ATV events that were
sufficiently extreme to constitute a nuisance.  See Schneider,
147 S.W.3d at 269.

            Nonetheless,
reasonable minds could have differed on the meaning, inferences, and
conclusions to be drawn from the aforementioned evidence.  But we note that the
trial court was entitled to disregard the contrary evidence offered due to the
relationship to Appellants of those witnesses testifying that the operation by
Appellants of a commercial ATV park caused them no discomfort and annoyance.  Based
on our review of the entirety of the record, we conclude that the evidence contrary
to the finding of a nuisance is not so against the great weight and
preponderance of the evidence supporting the trial court’s finding that its determination
was manifestly unjust.  Accordingly, we hold that there is both legally and
factually sufficient evidence to establish that the ATV events on Pool Ranch
created a nuisance in the community.  Appellants’ first issue is overruled.

 

 

Breadth of Injunction

            In
their second issue, Appellants argue that the trial court abused its discretion
by issuing an overly broad permanent injunction that completely enjoined them
from conducting any commercial ATV events on Pool Ranch.  Throughout the trial,
Appellants contended that they did not allow any unlawful incidents to occur on
their property during these ATV events and that they were entitled to use the
property as they wished.  On appeal, Appellants contend that, even if the
injunction was proper, it should have been limited so as to permit them to operate
a commercial ATV park on Pool Ranch in the same manner in which they had
operated a commercial ATV park there from 2003 to 2006.

Standard
of Review

            The
decision to grant a permanent injunction is ordinarily within the sound
discretion of the trial court.  See Vaughn v. Drennon, 202
S.W.3d 308, 313 (Tex. App.–Tyler 2006, no pet.).  A reviewing court should
reverse an order granting injunctive relief only if the trial court abused its
discretion.  See Butnaru v. Ford Motor Co., 84 S.W.3d 198,
204 (Tex. 2002).  We may not substitute our judgment for that of the trial
court by vacating or modifying an injunction simply because we would have decided
otherwise.  See Mabrey v. Sandstream, Inc., 124 S.W.3d 302,
309 (Tex. App.–Fort Worth 2003, no pet.).  An abuse of discretion does not
occur as long as there is some evidence to support the trial court’s decision
to grant the injunction.  Id.  An abuse of discretion does not
exist where the trial court bases its decision on conflicting evidence.  Id. 


Governing Law

            Every
order granting an injunction and every restraining order shall set forth the
reasons for its issuance; shall be specific in terms; shall describe in
reasonable detail and not by reference to the complaint or other document, the
act or acts sought to be restrained; and is binding only upon the parties to
the action, their officers, agents, servants, employees and attorneys, and upon
those persons in active concert or participation with him who receive actual
notice of the order by personal service or otherwise.  Tex. R. Civ. P. 683.  Because an injunction is an equitable
remedy, the trial court weighs the respective conveniences and hardships of the
parties and balances the equities.  Vaughn, 202 S.W.3d at 313. 
The trial court must balance the equities before issuing an injunction,
considering injury to (1) the defendant and the public if the injunction is granted
and (2) the complainant if the injunction is denied.  See Hot Rod
Hill Motor Park v. Triolo, 276 S.W.3d 565, 568 (Tex. App.–Waco 2008, no
pet.) (citing Storey v. Cent. Hide & Rendering Co., 148 Tex.
509, 226 S.W.3d 615, 618–19 (1950)).  An injunction should be broad enough to
prevent a repetition of the evil to be corrected.  Webb v. Glenbrook
Owners Assoc., Inc., 298 S.W.3d 374, 383 (Tex. App.–Dallas 2009, no
pet.).  An injunction must not be so broad, however, that it enjoins a defendant
from activities that are lawful and the proper exercise of his rights.  Id.

            A
business that is lawful in and of itself may become a nuisance because of the
locality in which it is carried on.  See Storey, 226
S.W.2d at 618.  A business may also be a nuisance because the place where it is
located is uncongenial to that type of enterprise.  Id.   The law
does not allow one to be driven from his home or compelled to live in
substantial danger or discomfort even though the danger or discomfort is caused
by a lawful and useful business.  Id.  The right to acquire a
known property and to deal with it and use it as the owner chooses, so long as
the use harms nobody, is a natural right.  Spann v. City of Dallas,
235 S.W. 513, 515 (Tex. 1921).  However, it is a right that takes into account
the equal rights of others, for it is qualified by the obligation that the use
of the property shall not be to the prejudice of others.  Id.  

Discussion

            In
the case at hand, the trial court found that the commercial ATV park operated
on Pool Ranch was a nuisance to its neighbors and the community.  Based on our
review of the record, there was no evidence before the court that established
that these commercial ATV events were any less a nuisance in 2007 than they were
in 2003.  Further, there was no evidence in the record that demonstrated what
number of ATVs or motorcycles in operation would not constitute a nuisance to
the community.  Without this evidence, there was no basis upon which the trial
court could craft an injunction that eliminated the nuisance caused by the
excessive noise, short of prohibiting the commercial ATV park on Pool Ranch in
its entirety.[3]

            The
evidence before the trial court was that the community was one of tranquility
before the commercial ATV park began operating on Pool Ranch.  Individuals living
in a rustic area do not forfeit their right to continued enjoyment of their serenity
because a neighboring landowner desires to make a relatively small sum of money
operating a commercial ATV park.  Based on our review of the trial court’s
injunction and the record as a whole, we conclude that the trial court carefully
weighed the equities of the two sides and made the appropriate decision to
restore the community to the peace and quiet it enjoyed before the commercial
ATV park began operating on Pool Ranch in 2003.  Accordingly, we hold that the
trial court’s injunction barring the operation of a commercial ATV park on Pool
Ranch was not overly broad.  Appellants’ second issue is overruled.

 

 

 

Disposition

            Having
overruled Appellants’ first and second issues, we affirm the
trial court’s judgment.

 

James T.
Worthen

                                                                              
                          Chief Justice

 

 

 

Opinion delivered July 13, 2011.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)









                [1]
In addition to the operation of a commercial ATV park on their property,
Appellants had leased their property out for use in conjunction with two
independent events––the Texas Redneck Games and the Mudigras Games.  Both of
these events were ultimately controversial.  Pool testified that Appellants
would no longer have events such as the Redneck or Mudigras Games, but that he
wanted to continue using Pool Ranch as a commercial ATV park.  On appeal,
Appellants attack the injunction only for the restrictions it places on using
Pool Ranch as a commercial ATV park.  We therefore address the issues only as
they relate to the trial court’s enjoining the operation of a commercial ATV
park.





[2]
We are not familiar with this term.  But it is apparent to us, from the context
in which the term is used, that it is intended to be pejorative.   





  [3]
We note that the injunction does not prevent Appellants and their families from
operating their personal ATVs on the property.